**BURNET, Commissioner of Internal Revenue, v. LIVEZEY.**

No. 3072.

Circuit Court of Appeals, Fourth Circuit.
March 13, 1931.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Allin H. Pierce, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for petitioner.

John T. Delaney and E. L. Hogsett, both of Huntington, W. Va. (Livezey, Hogsett & McNeer, of Huntington, W. Va., on the brief), for respondent.

Before PARKER, Circuit Judge, and McCLINTIC and COLEMAN, District Judges.

WILLIAM C. COLEMAN, District Judge.

The present case arises on petition to review a decision of the United States Board of Tax Appeals to the effect that compensation paid to respondent in 1923, by the state of West Virginia, for his services as counsel for the Public Service Commission of that state, was exempt from federal income tax on the ground that the respondent was an employee of the state of West Virginia, and that therefore his salary as such was exempt from such taxation by virtue of section 1211 of the Revenue Act of 1926 (26 USCA § 1065b). That section provides as follows: "Any taxes imposed by the Revenue Act of 1924 or prior Revenue Acts upon any individual in respect of amounts received by him as compensation for personal services as an officer or employee of any state or political subdivision thereof (except to the extent that such compensation is paid by the United States Government directly or indirectly), shall, subject to the statutory period of limitations properly applicable thereto, be abated, credited, or refunded."

The Commissioner of Internal Revenue had found a deficiency in respondent's income tax for the year 1923 in the sum of $355.09, because the Commissioner found that the compensation above referred to, paid to respondent, was taxable. From this determination respondent appealed to the Board of Tax Appeals, which reversed the Commissioner.

The law of West Virginia creating the Public Service Commission and defining its powers and duties contains the following provision: "The attorney general shall perform legal services under this act when required by the commission; provided, however, that the governor may appoint counsel for the commission, who shall act as legal advisor to the commission, and who shall perform such other legal services in representing the people in matters under the jurisdiction of the commission as the governor shall direct. It shall be the duty of such counsel to appear for the people in all cases where they are not represented by counsel, but he shall not have control of cases, either before the commission or on appeal therefrom, where the people are represented by counsel. The compensation of such counsel shall be fixed by the commission and he shall be paid as other employees of the commission." Barnes' West Virginia Code, Annotated, 1923, c. 150, § 1.

It appears from the findings of fact made by the Board of Tax Appeals, to which we are here confined, that pursuant to this provision, on September 1, 1921, the Governor of West Virginia appointed respondent counsel for the commission, without specifying the term. He accepted the appointment, his salary was fixed by the commission at $5,000 a year, payable monthly, and he received that amount during 1923. The services which he performed during that year consisted of rendering written opinions on

legal questions submitted to him by the commission, representing the commission in all litigation in the state and federal courts, appearing in hearings before the commission when specially requested, or when the public were not represented. He was not required by the commission to spend any specific number of days at the office of the commission, but his employment was continuous, and he gave preference to his official duties over the demands of his private law practice, which he continued at his residence in Huntington, W. Va., the principal office of the Public Service Commission being at Charleston, the state capital, about fifty miles distant. The nature of the questions propounded by the commission related to the regulation of public utilities, the fixing of their rates, and the regulation of their duties and responsibilities to the public. In the preparation and trial of cases, the respondent conferred with the commission as to the facts and the policy to be assumed by the commission, which latter was largely determined and controlled by the commission itself.

There is no question but that respondent's compensation is taxable as income derived from salary or compensation for personal services within section 213 of the Revenue Act of 1921 (chapter 136, 42 Stat. 227, 237), unless falling within the exemption provided in section 1211 of the Revenue Act of 1926, above quoted. The finding of the Board of Tax Appeals that it was so exempt is not subject to reversal unless "not in accordance with law." Revenue Act 1926, § 1003 (b), 26 USCA § 1226 (b); Bishoff v. Commissioner (C. C. A.) 27 F.(2d) 91; Ox Fibre Brush Co. v. Blair (C. C. A.) 32 F. (2d) 42, 68 A. L. R. 696, affirmed Lucas v. Ox Fibre Brush Co., 281 U. S. 115, 50 S. Ct. 273, 74 L. Ed. 733. The question therefore is, Does the record disclose evidence sufficient to support the Board's conclusion that respondent was an employee of the state of West Virginia? There can be no doubt but that the commission was itself an agency of the state, performing governmental functions, and also that the present respondent assisted in the performance of those functions. Was this sufficient, therefore, to constitute him an employee of the state within the meaning of section 1211 of the Revenue Act of 1926? Of course the fact that the law of West Virginia refers to him as an employee of the commission in providing that his compensation "shall be fixed by the Commission and he shall be paid as other employees of the Commission," is not conclusive. The relation of employer and employee is a question of fact. The Supreme Court has stated that the determining feature is whether there is, in a given case, such liberty of action as to exclude "the idea that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor." Metcalf & Eddy v. Mitchell, 269 U. S. 514, 521, 46 S. Ct. 172, 173, 70 L. Ed. 384.

We believe that the present respondent's employment by the commission was sufficiently under the control and guidance of the commission as to bring him within the aforegoing definition of employee. It is true he was allowed to continue his private law practice. He had no definitely defined working hours for the commission, and was free to use his own means and methods in performing his work for the commission. It is also true that the term of his employment was indefinite. Nevertheless there existed more than the ordinary relation of attorney and client, for the respondent was not employed from time to time on specific cases or pieces of work; nor was the amount of his compensation directly regulated or determined by the value of the services performed or to be performed. Furthermore, even though the commission may not have exercised control over the details of respondent's performance of his services, nevertheless it possessed the right so to do, and upon any differences of opinion the will of the commission ultimately controlled.

The facts in Metcalf & Eddy v. Mitchell, supra, are clearly distinguishable from those in the present case. There a consulting engineer, engaged as such by political subdivisions of states for work that was not permanent or continuous in character, on public water supply and sewage disposal projects, with duties prescribed by contract, was held to be neither an officer nor an employee under a provision of the War Revenue Act, providing for exemption of state officers and employees, similar to the statutory provision here involved. Clearly in that case, as the Supreme Court found, the taxpayer was an independent contractor, and so also was the taxpayer in the later cases in which the Supreme Court, relying upon this decision, reversed the action of the lower courts in granting exemptions. Lucas v. Howard, 280 U. S. 526, 50 S. Ct. 87, 74 L. Ed. 593; Howard v. Commissioner (C. C. A.) 29 F.(2d) 895; Lucas v. Reed, 281 U. S. 699, 50 S. Ct. 352, 74 L. Ed. 1125; Reed v. Commissioner (C. C. A.) 34 F.(2d) 263. In the first of these cases the taxpayer claimed exemption with

respect to fees paid for legal services rendered by him to municipalities in specific pieces of litigation. In the second case, the exemption claimed was upon income received in the form of attorney's fees for services as special counsel in representing the state in collecting its inheritance taxes; the taxpayer being designated for this specific employment by the Attorney General, pursuant to statutory authority.

A case, the facts in which more nearly approach the present situation, is that of Blair v. Mathews (C. C. A.) 29 F.(2d) 892, where the taxpayer, an attorney at law, was employed by the commissioners of Duval county, Fla., to attend to all legal matters for that county, at a fixed monthly compensation, for a period of two years, the employment including compulsory attendance as legal adviser to the county commissioners at all of its meetings, and he was otherwise at the beck and call of the commissioners, although he was not required to discontinue his private practice of the law. In reversing the Board of Tax Appeals and deciding that the taxpayer's compensation thus earned was exempt under the same provision of the law here involved, the Circuit Court of Appeals for the Fifth Circuit said, page 894 of 29 F.(2d): "The contract bound the taxpayer for a period of two years to attend to all legal matters for the county. He was not engaged to accomplish any particular result in a way chosen by himself, but was obligated to render any legal service for the county to which at any time during the period mentioned he was assigned by the board of county commissioners. One whose services are so at the command of another for a definite time is an employee of the latter, though the services contracted are legal services of a lawyer, who is not forbidden to render professional services to others. Seaboard Air Line Railway v. Continental Trust Co. (C. C.) 166 F. 597."

The Mathews Case was not reviewed by the Supreme Court as were the Howard and Reed Cases, and it is urged on behalf of the Commissioner of Internal Revenue that this decision, in view of the reversal in those cases, has become of doubtful authority because decided before the reversals in those cases. However, we are not impressed with this argument, because we believe that the cases are clearly distinguishable on their facts.

On behalf of the Commissioner of Internal Revenue, it is also urged that, in determining the degree of control, actual or potential, it is important to consider the exclusiveness of the services rendered, and in support of this the case of Blair v. Byers, a decision of the Circuit Court of Appeals for the Eighth Circuit, 35 F.(2d) 326, is relied upon. There the compensation involved was paid to the taxpayer for legal services rendered to the board of waterworks trustees of the city of Des Moines, Iowa, over a period of several years, at a stipulated yearly rate, without prohibition against engaging in private practice. In this decision, which found such compensation nonexempt, and thus reversed a contrary finding of the Board of Tax Appeals, the court may have been somewhat influenced by its own finding that the building and operation of a waterworks system by a municipality constitutes the exercise of a proprietary, rather than of a governmental, function. In any event, the duties of the respondent in the present case are created and at least broadly defined by statute, which does not appear to be true with respect to the attorney's duties in the Byers Case, and this may alone suffice to distinguish the two cases. See, also, Ogilvie v. Commissioner (C. C. A.) 36 F.(2d) 473.

Similarly, commissions received as compensation for services in collecting delinquent state and county taxes, such services being rendered under contracts with a state tax commission and boards of county commissioners, are not exempt because the taxpayer was an independent contractor. Roberts v. Commissioner (C. C. A.) 44 F.(2d) 168. Nor for the same reason are fees received as attorneys for state court receivers in special cases exempt. Elam v. Commissioner (C. C. A.) 45 F.(2d) 337. Nor fees paid an attorney as counsel for a bridge district of the state of Arkansas whose position and duties were not defined by statute, other than by the broad authority which the state Legislature gave to the bridge district, in creating it, to appoint all officers and agents deemed necessary and suitable for the conduct of its business. Burnet, Commissioner, v. McDonough, 46 F.(2d) 944.

In view of our finding that the respondent was an employee of the Public Service Commission of West Virginia and therefore of the state of West Virginia, it becomes unnecessary to determine whether he was also an officer of that state, a question properly to be determined by the definition given to the word "officer" by the law of that state, which, it may be said, we do not find to be different from the generally accepted definition of that term. See State ex rel. Key v. Bond, State Auditor, 94 W. Va. 255, 118 S.

E. 276; also Metcalf & Eddy v. Mitchell, supra; Suncrest Lumber Co. v. North Carolina Park Commission (C. C. A.) 29 F.(2d) 823; State Tax Commission v. Harrington, 126 Md. 157, 159, 94 A. 537.

Similarly, in view of our conclusion, it becomes unnecessary to discuss the larger question whether to tax the compensation here involved would be unconstitutional as imposing a burden upon a state instrumentality, a question which might still arise in the event of a finding that the respondent were neither an officer nor an employee of the state of West Virginia within the meaning of the Revenue Act of 1926, section 1211. It is sufficient to say that from McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, down through The Collector v. Day, 11 Wall. 113, 20 L. Ed. 122, and the many other decisions of the Supreme Court, the basis of every so-called extension of the doctrine of mutual immunity, which is inherent in both the state and the federal government, from the taxing power of each other, has always been that the person, agency, or res sought to be taxed is an instrumentality of government.

For the aforegoing reasons, we find that there was no error in the decision of the Board of Tax Appeals, and therefore that decision must be affirmed.