**MEIGS v. UNITED STATES.**

No. 3587.

Circuit Court of Appeals, First Circuit.

Oct. 28, 1940.

David Burstein, of Boston, Mass. (Hale & Dorr, George H. B. Green, and Samuel S. Dennis, 3d, all of Boston, Mass., on the brief), for appellant.

George H. Zeutzius, of Washington, D. C. (Samuel O. Clark, Jr., J. Louis Monarch, and Paul S. McMahon, all of Washington, D. C., and Edmund J. Brandon, and C. Keefe Hurley, both of Boston, Mass., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for the District of Massachusetts in favor of the government.

The plaintiff brought suit in 1935 to recover income taxes for the year 1932 which he alleged had been illegally assessed and collected from him upon compensation received by him as a nonresident gynecologist at the Pondville State Cancer Hospital in the Commonwealth of Massachusetts. The original petition stated that the plaintiff was an employee of the Commonwealth of Massachusetts at the Pondville Hospital during the entire calendar year 1932 and received during the year a salary of $1,172.60 in payment of services rendered in connection with the exercise of an essential governmental function of said Commonwealth and, therefore, was not taxable under the Revenue Act of 1932, 47 Stat. 169, 26 U.S.C.A. Int. Rev.Act, page 145 et seq.

After the enactment of the Public Salary Tax Act of 1939, 53 Stat. 575, 26 U. S.C.A. Int.Rev.Code, §§ 22 (a), and while this case was pending, the petition was amended and recited that during the entire calendar year of 1932 the plaintiff was an employee of the Commonwealth of Massachusetts at the Pondville State Cancer Hospital and received a salary during the year of $1,172.60; that the income tax paid on the amount was attributable to compensation for personal services as an officer or employee of the Commonwealth of Massachusetts, or an agency or instrumentality of said Commonwealth and that this suit for the recovery of such amount was pending on the date of the enactment of said Act. The plaintiff also contended in the amended petition that his salary was immune from federal income tax

prior to recent decisions on the ground that it was earned in the exercise of an essential governmental function of the Commonwealth by an employee thereof and that the plaintiff was entitled to a refund in the same manner as in the case of an income tax erroneously collected, pursuant to the provisions of Section 201 of the Public Salary Tax Act of 1939, 26 U.S. C.A. Int.Rev.Code, § 22 note. The pertinent provisions of this Act are as follows:

"Sec. 201. Any amount of income tax (including interest, additions to tax, and additional amounts) for any taxable year beginning prior to January 1, 1938, to the extent attributable to compensation for personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing—

\* \* \* \* \* \*

"(c) shall, if collected on or before the date of the enactment of this Act, be credited or refunded in the same manner as in the case of an income tax erroneously collected, in the following cases—

\* \* \* \* \* \*

"(3) Where a suit for the recovery of such amount is pending on the date of the enactment of this Act; \* \* \*."

At the close of all the evidence, the District Court granted the government's motion for judgment and denied the plaintiff's request for certain findings of fact and conclusions of law. The plaintiff then brought this appeal.

The facts as found by the court below may be summarized as follows:

In 1926, St.1926, c. 391, the Legislature of Massachusetts passed an emergency act which it declared to be "necessary for the immediate preservation of public health", and under its authority the Pondville State Cancer Hospital was established. The conduct of persons attached to the hospital is governed by rules and regulations promulgated by the Department of Public Health, and by the Superintendent of the Hospital. The physicians on the resident staff give their full time to the hospital and do not engage in outside practice, while the members of the visiting staff have regular calling hours at certain periods of each and every week.

The plaintiff is a gynecologist with an office in the City of Boston and an exten-sive private practice. He is a member of the staff of each of four hospitals in Boston, from only one of which, the Huntington Memorial Hospital, he receives a salary. In 1927 he became senior gynecologist of the visiting staff of the Pondville Hospital and at that time was paid for his services on a fee basis and mileage. In October, 1931, he was transferred to a salary basis of $1,200 a year. This salary basis was later changed in accordance with general pay adjustments in effect throughout the State, but the services rendered by the plaintiff during the year 1932 were the same as the services rendered by him prior to October 4, 1931 on a fee basis. The change in pay was made as a matter of economy.

The plaintiff was at all times and during the taxable year of 1932 in charge of the gynecological service and his duties were to take charge of all the gynecological cases and female cases of cancer, or cancer relative to the female genital organs, and to determine in conjunction with other members of the staff, which cases were to be operated on and which cases were to receive radium and X-ray treatment. He also had charge of the out patient clinic for gynecological patients. In his field of gynecology no other doctor at the hospital controlled his activities. The resident physicians consulted with him as to such gynecological cases and he told them what to do. He decided what course of procedure to follow and the treatment or operation of patients within his field of gynecology and did just as he did in private practice, and the hospital was only interested in seeing that his handling of the cases was up to standard. He was, of course, subject to the rules and regulations governing physicians on the visiting staff of the hospital.

In the schedule of "Surgical and Medical visits" his time at the hospital is listed as Tuesdays of alternate weeks but he and his assistant, Dr. Parsons, arranged their visits to suit their own convenience and one or the other of them was usually there each Tuesday; the plaintiff being there one-half a day each week or a full day in alternate weeks. As the service was covered, the hospital authorities did not interfere with this arrangement. It is clear that the plaintiff spent only a small proportion of his time at the hospital and his work there constituted only a very minor part of his professional activities.

The question whether the Pondville State Cancer Hospital is an agency or instrumentality of the Commonwealth of Massachusetts engaged in an essential governmental function was waived at the oral argument before this Court. For the purposes of the instant case, then, it is assumed that the state hospital is such an agency or instrumentality. The sole question is whether the plaintiff during the year 1932 was an employee of an agency or instrumentality of the Commonwealth of Massachusetts so that his compensation for services is exempt from taxation under the provisions of the Public Salary Tax Act of 1939.

In 1939, the Supreme Court in the case of Graves v. People of New York ex rel. O'Keefe, 1939, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466, completely discarded the former doctrine that state or federal employees were constitutionally immune from non-discriminatory income taxation by the other sovereignty. This subjected to federal taxation the incomes of all state or local employees whether they were employed in an agency engaged in an essential governmental function or not. However, in order to prevent undue hardship by the retroactive taxation of incomes hitherto considered immune, Congress enacted the Public Salary Tax Act, supra.

■ The purpose of the Act was to provide that where a taxpayer asserted immunity as a state employee as to taxes prior to the taxable year beginning January 1, 1939, such immunity would be allowed, under certain procedural circumstances here fulfilled, if the same result would have been reached prior to the O'Keefe decision. Coates v. United States, 2 Cir., 1940, 111 F.2d 609. See H.R.Rep. No. 26, 76th Cong., 1st Sess. (1939). The taxability of independent contractors with the State, or state employees of an agency considered not to be engaged in an essential governmental function had long been recognized and was in no wise changed by this Act. J. E. Huckabay v. Com'r, 1939, 40 B.T.A. 9; John T. Rowland v. Com'r, 1939, 40 B.T.A. 11. See H.R.Rep. No. 26, supra. The immunity was to be no broader and no narrower than former-

ly. It seems incontrovertible that the words "officer or employee" as used in the Public Salary Tax Act were intended to have a meaning no broader than that formerly given to the same words in exemptive provisions of income tax statutes, e. g., Revenue Act of 1926, § 1211[1], 44 Stat. 130, 26 U.S.C.A. Internal Revenue Acts, page 342. Coates v. United States, supra. To secure the advantage of such an expressed exemption, it was always necessary to establish that the taxpayer was employed in an essential governmental agency and that he was an officer or employee and not an independent contractor. See, e.g., Saxe v. Anderson, D.C.S.D.N.Y. 1937, 19 F.Supp. 21, affirmed, Saxe v. Shea, 2 Cir., 1938, 98 F.2d 83; Burnet v. Livezey, 4 Cir., 1931, 48 F.2d 159; cf. Metcalf & Eddy v. Mitchell, 1926, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384. Similar showings must be made to come within the provisions of the Public Salary Tax Act. Thus, the contention of the plaintiff that the exemption provided in the Act is broader than that formerly allowed is insupportable.

■ However, the government by waiving the question has relieved the plaintiff of the burden of convincing this court that the Pondville State Hospital is an essential governmental instrumentality, and no contention is made that the plaintiff is a state "officer". Therefore, if the plaintiff is an employee of the State or an instrumentality thereof he is entitled to the refund claimed. The basic distinction between employees who are immune from taxation and so-called independent contractors who are not immune was given expression in Metcalf & Eddy v. Mitchell, supra, 269 U.S. at page 521, 46 S.Ct. 172, at page 173, 70 L.Ed. 384. In that case, where the salaries of consulting engineers on state water supply projects were held not immune from federal income taxation, the primary test was said to be whether there existed that "liberty of action which excludes the idea [of] that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contrac-

---

1 "Sec. 1211. Any taxes imposed by the Revenue Act of 1924 or prior revenue Acts upon any individual in respect of amounts received by him as compensation for personal services as an officer or employee of any State or political subdivision thereof (except to the extent that such compensation is paid by the United States Government directly or indirectly), shall, subject to the statutory period of limitations properly applicable thereto, be abated, credited, or refunded".

tor". This concept of control, combined with the closely allied facts concerning hours of work, freedom to engage in other professional activity, continuity of employment, and so forth, has remained the real method of separating those immune from those subject to this particular type of taxation. See, e.g., Commissioner v. Modjeski, 2 Cir., 1935, 75 F.2d 468, certiorari denied, 1935, 295 U.S. 764, 55 S. Ct. 924, 79 L.Ed. 1706; Register v. Commissioner, 5 Cir., 1934, 69 F.2d 607, 93 A. L.R. 186; Burnet v. Livezey, supra (suit brought under § 1211 of the Revenue Act of 1926, supra).

Clearly, the question of control is a matter of fact to be settled by the circumstances of each particular case. Underwood v. Commissioner, 4 Cir., 1932, 56 F.2d 67; Burnet v. Livezey, supra. All that can be done is to weigh the facts tending to show the relationships, and to decide, though it may be difficult in any particular case, on which side of the vague line the case must fall. Register v. Commissioner, supra; cf. Metcalf & Eddy v. Mitchell, supra, 269 U.S. at page 523, 46 S.Ct. 172, 70 L.Ed. 384. In such cases, a detailed discussion of the authorities seems unnecessary as each must hinge upon its peculiar facts. However, they are well collected in a series of annotations entitled "Income Tax in Respect of Salaries of Public Officers and Employees", 120 A.L. R. 1477, 1481; 114 A.L.R. 1190, 1192; 108 A.L.R. 1439, 1441. Suffice it to say that in most of the cases where professional men were held to be employees, it was found that the state or local agency had first call upon their services and could make use of their entire time to the exclusion of private pursuits. See, e.g., Commissioner v. Coughlin, 3 Cir., 1937, 87 F. 2d 670 (attorney for Poor and School Districts); United States v. Butler, 5 Cir., 1931, 49 F.2d 52 (county attorney); Robert P. Bay v. Com'r, 1933, 28 B.T.A. 1169 (Chief Medical Examiner for Industrial Accident Commission). But cf., Coates v. United States, supra (town attorney held taxable). On the other hand, where professional men were held to be independent contractors and subject to taxation, stress was laid on the ability of the taxpayer to carry on private work, and the fact that he was simply required to reach a particular result with little or no control over the method of attainment. See, e.g., Metcalf

& Eddy v. Mitchell, supra (consulting engineers); Ewart v. Commissioner, 3 Cir., 1938, 98 F.2d 649 (town attorney); Packard Thurber v. Com'r, 1930, 20 B.T.A. 1208 (examining physician for Industrial Accident Commission). See also Lucas v. Reed, 281 U.S. 699, 50 S.Ct. 352, 74 L.Ed. 1125, reversing per curiam 3 Cir., 34 F.2d 263; Lucas v. Howard, 280 U.S. 526, 50 S.Ct. 87, 74 L.Ed. 593, reversing per curiam 5 Cir., 29 F.2d 895. In the two latter cases the Supreme Court held taxable attorneys working for state governments or subdivisions thereof, upon authority of the Metcalf case.

We believe the plaintiff falls within the latter class and cannot be considered to be an employee. The fact that he may have been included in the definition of employee in the statutory authorizations under which he was hired and pursuant to which his salary was cut and later restored is not controlling. Pickett v. United States, 8 Cir., 1938, 100 F.2d 909, certiorari denied 1939, 306 U.S. 647, 59 S.Ct. 587, 83 L.Ed. 1046; Burnet v. Livezey, supra; Saxe v. Anderson, supra. Nor is it vital that the plaintiff is now paid on a salary basis rather than on the former fee basis, since the duties performed are the same and the change in compensation was made solely for reasons of economy and not in order to change the relationship between the parties. Joseph J. Sullivan, v. Com'r, 1935, 33 B.T.A. 629. A method of measuring compensation is of little significance. United States v. Butler, supra.

The plaintiff is not subject to sufficient control to be considered an employee. He is in complete charge of the gynecological service of the hospital, and no one tells him how to treat the patients under his care. The hospital is interested only in the satisfactory coverage of the service. The plaintiff gives up only a small portion of his time to the hospital and is under no obligation to give the hospital patients preference over his private patients. The Pondville State Hospital is only one of four hospitals to the visiting staffs of which the plaintiff is attached. At each of these hospitals he is subject to the regulations and rules governing visiting doctors and could be required to submit reports and consult with other doctors in charge of the institution. The income from the hospital is but a small portion of his total annual income, and his private

practice is extensive. The plaintiff is considered to be an outstanding doctor in his field, and the reports to, consultation with, and oversight of the Superintendent of the Hospital is certainly not the type of control necessary to set up the relation of employer-employee. See Haight v. Commissioner, 7 Cir., 1931, 52 F.2d 779, 781. The set day for the visits of the plaintiff is simply the result of the natural necessity for certainty that the gynecological service will be adequately covered, and the complete lack of an employee relationship is demonstrated by the frequent interchange of days and hours of attendance between the plaintiff and his associate with no complaint from the hospital.

In the Rules and Regulations promulgated by the hospital for the governance of the visiting staff, Rule 2 reads: "All visits and operations must be planned with due regard to meal hours. of *the employees.*" (Italics supplied.) This indicates that a distinction is made between the visiting physicians and employees; and that many of the visiting doctors are paid is apparent from Rule 11 which provides four weeks vacation with salary, and longer without pay if a suitable substitute is provided, for members of the visiting staff.

The plaintiff is in the same position he would occupy if a single patient paid him a yearly sum to examine him weekly and for the sake of convenience requested a particular form of report and a fixed hour for the examination, which the doctor might vary by arrangement. It is difficult to consider the doctor an employee of his patient, yet the situation differs only in degree from the instant case.

■ Furthermore, it seems well established that there is no such relation of employer-employee between a hospital and its visiting surgeons sufficient to support an action against the hospital to require it to respond in damages for any negligent treatment of a patient by one of its doctors. See Roosen v. Peter Bent Brigham Hospital, 1920, 235 Mass. 66, 74, 126 N.E. 392, 396, 14 A.L.R. 563; Hamburger v. Cornell University, 1925, 240 N.Y. 328, 335, 336, 148 N.E. 539, 541, 42 A.L.R. 955; Schloen-dorff v. Society of New York Hospital, 1914, 211 N.Y. 125, 130, 105 N.E. 92, 93, 94, 52 L.R.A.,N.S., 505, Ann.Cas.1915C, 581; Annotation, 14 A.L.R. 572, 598.

The cases cited as controlling are plainly distinguishable. Mallory v. White, D. C.Mass.1934, 8 F.Supp. 989, dealt with a pathologist at the Boston City Hospital whose working hours were daily from 9 to 5. He signed the regular pay roll, contributed to the city employees' pension fund by deduction from his salary, and was under the direct control of the hospital authorities. Cook v. United States, D. C.Mass.1939, 26 F.Supp. 253, was decided on the ground that the Worcester City Hospital was not engaged in an essential governmental function, and there is not the slightest intimation that the court would have held the radiologist involved to be an employee within the meaning of the income tax immunity had it been necessary to decide the question. In Walter S. Goodale v. Com'r, 1936, 34 B.T.A. 697, the government conceded that the Superintendent of the Buffalo City Hospital was an employee of the city. That is in no way inconsistent with our decision, as the duties of a superintendent in control of a city hospital and his relations to the state or city are quite different from those of a visiting physician at the same institution. While the opposite results reached in borderline cases on either side of a line sometimes appear arbitrary and based on fine distinctions, that is the inescapable result of the necessity for drawing lines, a necessity obviated for the future in these circumstances by the decision in the O'Keefe case, supra.

■ In our opinion, the plaintiff was not an employee of the State of Massachusetts within the meaning of Section 201 of the Public Salary Tax Act and the state of the law prevailing prior to Graves v. People of New York ex rel. O'Keefe, supra. The tax in question was legally assessed and collected, and the refund thereof was properly denied.

The judgment of the District Court is affirmed.